STATE OF CONNECTICUT *v.* GERARD EDWARDS
(4265)

HULL, DALY and STOUGHTON, Js.

Argued February 9—decision released April 21, 1987

*Ben A. Solnit,* for the appellant (defendant).

*James G. Clark,* assistant state's attorney, with whom, on the brief, were *Linda L. Yoder,* special attorney, and *John Waddock,* assistant state's attorney, for the appellee (state).

DALY, J. After a jury trial in which two unrelated criminal matters were joined, the defendant was convicted of the second matter, burglary in the third degree in violation of General Statutes § 53a-103 and criminal attempt to commit larceny in the sixth degree in violation of General Statutes §§ 53a-49 and 53a-125b. On appeal from the judgments of conviction, he claims that the trial court erred (1) in failing to sever the two cases, (2) in improperly instructing the jury as to the

burglary charge in the second matter, and (3) in denying the defendant's motion for a new trial based on newly discovered evidence relevant to the second matter. We find no reversible error.

The jury could reasonably have found the following facts. In the first criminal matter (hereinafter referred to as matter I), wherein the defendant was acquitted, the defendant was charged with burglary in the third degree and larceny in the third degree. The defendant's fingerprints were found on a pane of glass which had been removed from the rear door of a residence from which two candelabra and a tea set had been purloined. The defendant's defense was that he and his brother had painted that residence some months previously and, in the course of painting near the door, his ladder had fallen, breaking glass in the door. The defendant maintained that he had replaced the pane of glass on which his fingerprints were later found.

In the second case (hereinafter referred to as matter II), the complainant and his wife, upon arising to say their morning prayers, discovered a man hiding under their bed. As the intruder fled through the cellar, he was observed by the complainant's son, who identified the intruder as his friend, the defendant. The son and the defendant had socialized together the previous evening in the defendant's home, just up the street. Although the pockets of the complainant's trousers, which had been left on a chair, were turned inside out, it did not appear that anything had been taken. The defendant maintained that he had walked the son home twice the previous evening because the son was inebriated. The defendant presented two alibi witnesses, his sister and his niece, who testified that the defendant was at home sleeping during the time of the incident.

Prior to the trial, the state moved for a joinder of the two matters. The defendant objected, but the

motion was granted. After his acquittal on the first matter and his conviction on the second, the defendant filed a motion for a new trial on the basis of newly discovered evidence that the son had retracted his identification of the defendant as the culprit. At a hearing on the motion, the defendant's sister so testified. The motion was denied.

I

The defendant first claims that the trial court erred in granting the state's motion for joinder and in denying the defendant's motion for severance. The defendant claims that this decision, in effect, precluded him from exercising both his right *not to* testify in matter I and his right *to* testify in matter II.

A judicial authority may order that two or more indictments or informations or both, whether against the same defendant or different defendants, be tried together. Practice Book § 829; General Statutes § 54-57. A judicial authority may also order separate trials if it appears that a defendant is prejudiced by joinder. Practice Book § 828. This does not mean that severance is to be had for the asking. *State* v. *King,* 187 Conn. 292, 302, 445 A.2d 901 (1982); see also *State* v. *Bell,* 188 Conn. 406, 410–11, 450 A.2d 356 (1982).

The question of severance lies within the discretion of the trial court. We will not disturb the trial court's conclusion on the issue absent a clear abuse of discretion. The discretion to sever a trial should be exercised only if a joint trial will substantially prejudice the defendant. Substantial prejudice is more than disadvantage and the formidible task of demonstrating an abuse of discretion and that a joint trial resulted in substantial prejudice falls to the defendant. *State* v. *Smith,* 201 Conn. 659, 669, 519 A.2d 26 (1986); *State* v. *Schroff,* 198 Conn. 405, 408, 503 A.2d 167 (1986); *State* v. *Rodgers,* 198 Conn. 53, 63, 502 A.2d 360 (1985); *State*

v. *Wiggins,* 7 Conn. App. 95, 101, 507 A.2d 518 (1986). Simply put, the test to be applied is whether substantial injustice will result if the charges are tried together. *State* v. *King,* supra, 299; *State* v. *Oliver,* 161 Conn. 348, 360–61, 288 A.2d 81 (1971).

In this case, the defendant asserts that the joinder of the two matters impermissibly interfered with his desire both to remain silent on one of the matters and to testify in the other. Clearly, the defendant had the right to establish and to present a defense. *State* v. *Delgado,* 8 Conn. App. 273, 282, 513 A.2d 701 (1986).

An accused's decision to testify on some but not all of the charges does not automatically entitle him to a severance. If it did, the defendant, and not the court, would control whether he would be granted a severance. The judge has the discretion to weigh the varying circumstances in each case, remaining always mindful of the tension between concern for judicial economy and the defendant's interest in choosing to testify or to remain silent, and to grant or deny the severance accordingly. *State* v. *Bell,* supra, 410–11; *State* v. *King,* supra, 304.

There is no need for severance unless the defendant demonstrates with convincing clarity that he had (1) important testimony to present on one count and (2) a strong need to refrain from testifying on the other. In order to show this, the defendant must provide enough information about the testimony he intends to give on the one count as well as his reasons for wishing to remain silent on the other. This information must satisfy the court that the claim of prejudice is genuine, and provide sufficient information for a proper exercise of the court's discretion. *State* v. *Schroff,* supra, 409; *State* v. *Rodgers,* supra, 65; *State* v. *King,* supra, 302. In addition, if the multiple counts are such that the state's evidence can be presented in such a way

that the jury will be able to treat the evidence on each charge separately, so that the defendant's case is not confounded, the trial judge need not order a severance. *State* v. *King,* supra, 301; *State* v. *Oliver,* supra, 361; *State* v. *Frazier,* 7 Conn. App. 27, 38, 507 A.2d 509 (1986).

The defendant claims he did not wish to testify in the first matter so as to protect himself from damaging impeachment. He further claims that his testimony was not required in that matter since the state's only evidence was circumstantial and he could refute it through the use of fingerprints. In the second matter, the defendant intended to present an alibi defense through his own testimony and that of other members of his family. Thus, the testimony the defendant intended to present himself on the second matter was similar to the evidence he intended to offer through his alibi witnesses. The defendant did not present the trial court with information which demonstrated a strong reason to refrain from testifying in matter I or the "importance" of his testimony in matter II.

In this case, the state presented its evidence to the jury in two distinct segments, first introducing evidence on matter I, and then introducing evidence on matter II. The jury was specifically instructed several times to consider each incident and its evidence separately.[1]

---

[1] The courts introductory remarks included the following:

"Now, in this case before you, as you have heard, there are two separate and distinct alleged incidents or transactions, each composed of two counts which are alleged, which have been consolidated by the court into one information . . . . In one part of the information is a burglary in the third degree and larceny third degree. Both of those two counts are alleged to have occurred on or about September 12, 1983.

"Also, as part of the same information there are two other counts which are burglary in the third degree and larceny in the sixth degree, alleged to have occurred on or about February 15, 1984. There are two incidents that are alleged in that information, each one charges two separate crimes. You must consider each alleged incident separately and distinct from the

Thus, the possibility that the jury would be confused or would consider the evidence in a cumulative manner was minimized. See *State* v. *Wiggins,* supra, 101. In addition, the fact that the jury returned a verdict of not guilty on matter I and guilty on matter II suggests a lack of confusion on the part of the jury.

The defendant has failed to sustain his heavy burden of showing that the denial of his motion to sever resulted in substantial injustice or prejudice. In another context, our Supreme Court has stated that in order to demonstrate an abuse of the trial court's discretion, the defendant must show that the court " 'acted arbitrarily and substantially impaired the defendant's ability to defend himself, before an appellate court will conclude that the trial judge abused his discretion.' "

---

other. The defendant's guilt or innocence in one alleged incident must not be considered or affect your verdict in the other alleged incident. It is of the utmost importance that you keep each alleged incident separate and distinct from the other. There is one alleged incident composed of two counts which allegedly occurred on September 12, 1983. There is a second incident alleged with two counts which allegedly occurred on February, in February of 1984.

"You must not consider, you must not commingle the evidence. You must consider them separately and distinctly. The evidence in one must not affect your judgment in the other; and to help you keep the evidence separate and distinct, the court has instructed the state and the defense that they are to put the evidence--we will proceed with the first alleged incident of September, 1983 matter. We will proceed first and conclude that incident and then we will proceed with the alleged February 1984 matter."

At the close of evidence on matter I, the court stated in part:

"When we commence later on this morning you will hear evidence concerning the alleged other offense. Now, it is most important because of the consolidation to separate the incidents. It is most important that you consider each alleged incident separate and distinct from the other. The defendant's guilt or innocence in one alleged incident must not be considered or affect your verdict in the other alleged incident. It is most important that you keep separate and distinct—and I have tried to keep the evidence separate and distinct. We have not commingled any of the witnesses . . . ."

In its final instructions to the jury the court stated in part:

"You must keep them both separate in your determination, and separate in your minds, in the determination of your verdict. You must con-

*State* v. *Marra,* 195 Conn. 421, 437–38, 489 A.2d 350 (1985) (discussing the denial of a motion for a continuance). After weighing the important interest of the judicial economy of a single trial against this defendant's interest and reasons for desiring a severance, we conclude that the joinder was not erroneous and we cannot find an abuse of discretion in the denial of the defendant's motion to sever.

## II

The defendant's next claim concerns the requirement under the sixth amendment to the United States constitution, applicable to the states through the fourteenth amendment, that the verdicts of six member juries must be unanimous. See *Burch* v. *Louisiana,* 441 U.S. 130, 99 S. Ct. 1623, 60 L. Ed. 2d 96 (1979). The defendant

sider each, alleged incident separately and distinctly, one from the other. The evidence in one alleged incident must not be considered by you, or affect your verdict from the other alleged incident. The defendant's guilt or innocence in one alleged incident must not be considered by you, or affect your verdict in the other alleged incident.

"The court has consolidated these two alleged incidents for the purposes of judicial expediency. The court has attempted to see to it that the introduction of the testimony that was offered to you was done in an orderly fashion as could be in a logical fashion as to the alleged first incident, and all of that evidence in that one and then begin the alleged second incident. The purpose of this order was to assist you in keeping the two incidents separate and distinct. By virtue of the fact that there are two, separate incidents pending against the defendant, you must infer nothing from that consolidation. The matter of consolidation is the court's. Again, it is for the purpose of judicial expedience and nothing more, for that consolidation . . . ."

The court further stated: "As I have said many times, these are two separate instances. You cannot merge them together in any way. I am sure you understand that. And just now, I mentioned about the cumulative effect. It does not fit all the charges. I am only talking about the cumulative effect of each, the cumulative effect as to each charge, separately, each of the four charges; and again, my instructions will be addressed specifically, to each and every one of the charges separately and distinct from the other. So, to talk about cumulative, it does not mean to merge all the four offenses cumulatively. Again, it means just cumulative impact of the evidence, as the evidence pertains to each, specific charge."

was charged with burglary in the third degree.[2] An essential prerequisite to a conviction of burglary in any degree is proof beyond a reasonable doubt that the accused entered or remained unlawfully in a building or dwelling. To enter unlawfully means to accomplish an entry by unlawful means, while to remain unlawfully means that the initial entering of the building or dwelling was lawful but the presence therein became unlawful because the right, privilege or license to remain was extinguished. When either of these situations is established, the threshold element of burglary is present. *State* v. *Belton,* 190 Conn. 496, 500–501, 461 A.2d 973 (1983).

In the present case, the information charged that the defendant "entered or remained unlawfully." According to the defendant, the trial court's failure to charge the jurors that they all had to agree on which, if either, of the alternatives the state had proven, created a reasonable possibility that they were misled to believe that they could return a guilty verdict on that count absent unanimity. The state initially argues that since the defendant neither submitted a request to charge, nor excepted to the charge as given, this claim should not be reviewed. The defendant replies that this claim is reviewable under the fundamental right, fair trial rationale of *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). We agree.

We have held that a claim such as this is reviewable, even absent a request to charge or an exception, if the record supports the claim that the accused was deprived of a constitutional right and a fair trial. *State* v. *Benite,* 6 Conn. App. 667, 671, 507 A.2d 478 (1986); *State* v. *West,* 3 Conn. App. 650, 654, 491 A.2d 428, cert. denied, 196 Conn. 810, 497 A.2d 906 (1985). The rec-

---

[2] General Statutes § 53a-103 (a) provides: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

ord before us provides such support. Thus, we will review the claim to determine whether the defendant was in fact deprived of a constitutional right and a fair trial, and if so, whether reversal of the resulting judgment is required. *State* v. *West,* supra, 654; see also *State* v. *Torrence,* 1 Conn. App. 697, 702–705, 476 A.2d 598 (1984), aff'd, 196 Conn. 430, 493 A.2d 865 (1985).

It is undisputed that the sixth amendment to the United States constitution guarantees the defendant in a criminal case the right to a unanimous verdict if he is tried by a jury of six. *Burch* v. *Louisiana,* supra; *State* v. *Benite,* supra. The defendant claims that he has been denied this right. He argues that the state presented evidence supporting both unlawful entry and unlawful remaining under General Statutes § 53a-103 (a). He claims that this evidence coupled with the failure of the trial court to charge the jurors sua sponte that they were required to agree on which of the two alternatives the state had proven, created a distinct possibility that the jurors could have disagreed on the alternative yet still have found him guilty of the charge. The defendant further argues that the two choices are conceptually different, and therefore a disagreement by the jurors as to which was proven would, in effect, be a disagreement as to the criminal act committed, thus violating his sixth amendment right to a unanimous verdict. *State* v. *Benite,* supra, 671–72.

The defendant claims that this situation required the court specifically to instruct the jurors that they had to agree unanimously on which, if either, of the acts was committed by the defendant. See *United States* v. *Gipson,* 553 F.2d 453, 455–56 (5th Cir. 1977). Such a charge is required if (1) a jury is instructed that the commission of any one of several alternative actions would subject the defendant to criminal liability,[3] (2) the

---

[3] The court's charge included the following: "[Y]ou must next consider and decide whether the defendant entered or remained unlawfully in

actions are conceptually different and (3) the state has presented evidence on each of the alternatives. *State v. Benite,* supra, 674. Here, the two types of conduct which lead to criminal liability under the burglary statute are conceptually distinct. Illegal entry is accomplished by way of entry without permission, license, or privilege. Remaining unlawfully however, contemplates a legally permissible entry that only later becomes unlawful. *State v. Belton,* supra, 500. The defendant asserts that evidence on each alternative was presented to the jury thereby necessitating a special charge. We disagree. After a careful review of the record, briefs and the voluminous transcript in this case, we find no evidence introduced by either the state or the defendant, that the defendant had *lawfully entered* the Brook's home, yet unlawfully remained. Even assuming that the state did in fact present evidence of unlawful entry distinct from unlawful remaining, we must still determine whether the failure to give a special charge was reversible error.

An error of constitutional dimension does not necessarily require reversal of a criminal conviction; *Chapman v. California,* 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); if the error is harmless beyond a reasonable doubt. *Rose v. Clark,* 478 U.S. 570, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986); *State v. Perez,* 10 Conn. App. 279, 289, 523 A.2d 508 (1987). The defendant's claim that the trial court's charge denied him the right to a unanimous verdict is premised upon the sixth amendment to the United States constitution. He neither analyzes nor even mentions a distinct state basis for this claim. Thus, we apply the harmless error test set out

it. . . . To establish burglary, the state must prove either that the defendant entered unlawfully or that, regardless of how he entered, he remained unlawfully. To make either the entry, or the remaining, unlawful within this requirement, it must be shown that he did so when not licensed or privileged to do so."

in *Rose* v. *Clark,* supra, and ask whether, on the whole record, the error was harmless beyond a reasonable doubt.

On the facts of this case, it defies logic and reason to conclude that the jury was not in unanimous agreement that the defendant entered unlawfully. See contra *State* v. *Belton,* supra, 503–504. Let us assume arguendo that three jurors found that the defendant entered unlawfully, and three found that he remained unlawfully. Three witnesses, the complainant, his wife, and their son specifically testified that the defendant did not have permission to enter the house. The defendant never claimed that he had permission to enter the house, nor did he present any evidence of a lawful entry. The defendant was seen in the bedroom and in the cellar. Confronted with a complete lack of evidence of *lawful* entry, combined with ample evidence of *unlawful* entry, any juror tending to conclude that the defendant remained unlawfully logically must also have concluded that the defendant's means of getting to his unlawful position was also unlawful. Given the specific facts of this case, the verdict of guilty necessarily encompassed a unanimous finding that the defendant had entered unlawfully. See *State* v. *Jones,* 193 Conn. 70, 77, 475 A.2d 1087 (1984). In addition, the trial judge admonished the jury several times that the verdict on each count had to be unanimous.[4] Thus, we conclude that any error in the court's charge was harmless beyond a reasonable doubt.

## III

In his third and final claim of error the defendant challenges the denial of his motion for a new trial based

---

[4] "Whatever your verdict should be as to the offenses charged, it must be a unanimous verdict. . . . Each verdict whether guilty or not guilty, each specific one, must be unanimous. In other words, all six of you have to agree. . . . Now, again, in order to return a verdict each juror must agree thereto. . . . When you have arrived at a verdict, which must be unanimous, you will inform the sheriff. . . ."

on newly discovered evidence. The alleged new evidence consisted of a claim that on two separate occasions, the complainant's son told the defendant's sister, mother and girlfriend that he was uncertain and may have been mistaken in his previous identification of the defendant. At the hearing on the motion for a new trial only the defendant's sister so testified. The complainant's son denied any such recantation.

The rules governing the granting of a new trial whether by motion; Practice Book § 903; or by petition; General Statutes § 52-270; based on newly discovered evidence are the same in criminal or civil cases. *State v. Davis,* 2 Conn. Cir. 257, 260, 197 A.2d 668 (1963). The party requesting the new trial must prove that the evidence was newly discovered, that it would be material to the issue on a new trial, that it could not have been discovered or produced through due diligence at the earlier trial, that it was not cumulative, and that it is likely to produce a different result in a new trial. *Kubeck* v. *Foremost Foods Co.,* 190 Conn. 667, 670, 461 A.2d 1380 (1983); *Sands Associates* v. *Rios,* 6 Conn. App. 84, 88, 503 A.2d 179 (1986); *Carrione* v. *State,* 3 Conn. App. 633, 634, 491 A.2d 421, cert. denied, 197 Conn. 801, 495 A.2d 280 (1985). The defendant claims that this evidence was newly discovered, was material, was exculpatory and would probably have raised a reasonable doubt in the minds of a jury.

"Where claimed newly discovered evidence would merely affect the credibility of a witness, it is not a ground for a new trial unless it is reasonably probable that on a new trial there would be a different result. . . . Only under most exceptional circumstances, even in a capital case, could a witness' testimony be so important and influential that a court could, within the limits of a sound discretion, determine that new evidence merely impeaching the witness' credibility would prob-

ably produce a different result. . . . The rule restricting the right to a new trial when one is claimed on the basis of newly discovered evidence merely affecting the credibility of a witness is necessary because 'scarcely has there been an important trial, with many witnesses, where [after the trial] diligent search would not have discovered evidence [to impeach the character of] some witness on the trial.' " (Citations omitted.) *Lancaster* v. *Bank of New York,* 147 Conn. 566, 578, 164 A.2d 392 (1960). In this instance, the only new evidence was the disputed testimony of the defendant's sister claiming that one of the state's witnesses recanted his previously damaging testimony. Thus, the new evidence would only have been used to impeach the credibility of a state's witness.

In this case, the same trial judge presided at the trial and at the hearing on the motion for a new trial. That judge was in a uniquely advantageous position to assess whether another trial would produce a different result, given the introduction of the new evidence. We must accord every reasonable presumption to the action of the trial court. B. Holden & J. Daly, Connecticut Evidence §§ 35, 62, 64. The trial court apparently concluded that this additional testimony alone did not establish the probability of a different result at a second trial, especially since the defendant's sister had testified as an alibi witness for the defendant, and since the complainant's son denied making the recanting statements. We conclude that the trial court's decision denying a new trial on the basis of this evidence was not an abuse of its discretion.

There is no error.

In this opinion the other judges concurred.